IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GENEVA KING,

        Plaintiff,

  vs.                                      Civil Action 2:11-CV-339
                                          Judge Graham
                                          Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

        This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 15, and the Commissioner's *Memorandum in Opposition*, Doc. No. 20.

**Background and Procedural History**

        Plaintiff Geneva King filed the current, her third, application for benefits on February 28, 2007. The application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.

        On August 12, 2009, plaintiff, represented by counsel, appeared and testified at the administrative hearing, as did Carl Hartung, who testified as a vocational expert.

        In a decision dated September 15, 2009, the administrative law judge found that plaintiff's severe physical and mental impairments neither meet nor equal a listed impairment and leave her with a residual functional capacity for a reduced range of light work. Although plaintiff is unable to perform any of her past work, the

administrative law judge relied on the testimony of the vocational expert to find that plaintiff could nevertheless perform work that exists in significant numbers in the national economy.  The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act.  That decision became the final decision of the Commissioner of Social Security when the Appeals Counsel declined review on March 18, 2011.

**Medical Record before the Administrative Law Judge**

Plaintiff was 46 years of age at the time she applied for benefits.  She has a GED and prior work experience as a tagger, laundry worker, cashier, telemarketer and office helper.

The medical record documents both physical and mental impairments.

Plaintiff has experienced a seizure disorder for a number of years secondary to a head injury.  Dana Vallangeon, M.D., who has treated plaintiff for the condition, reported to the state agency in April 2007 that plaintiff has experienced no seizures since 2002.  A.R. 144.  Dr. Vallangeon reported that Tegretol controls the condition, but that plaintiff is "somewhat noncompliant."  A.R. 145.  According to Dr. Vallangeon, plaintiff's "daily ability to function is not impaired due to seizures. . . ."  *Id.*

In January 2005, plaintiff presented to an emergency room for complaints of arm pain.  X-rays of the cervical spine were normal and plaintiff was diagnosed with acute cervical radiculopathy.  A.R. 141.

Plaintiff was seen in an emergency room in July 2006 following an assault.  A chest x-ray was normal, as were CT scans of the cervical and thoracic spine and the brain. A.R.  126-28.

An October 2006 EEG was suspicious, but not definitive, for

2

epileptic activity. A.R. 139, 146, 148.

In June 2007, plaintiff presented to an emergency room after falling off a couch and injuring her left foot. An x-ray confirmed a Lisfranc fracture and dislocation. A.R. 151, 154. In August of that year, plaintiff underwent a tarsometatarsal fusion. *See* A.R. 200.

In September 2007, plaintiff presented to an emergency room after suffering a seizure. Records indicate that plaintiff had not been compliant with her medication. A.R. 158. A CT scan of the head showed no acute intracranial process. A.R. 163.

In January 2008, Scott Lewis Donaldson, Ph.D., performed a consultative psychological evaluation of plaintiff as the request of the state agency. On clinical examination, plaintiff's affect was flat and her mood was anxious. A.R. 168. She was alert and oriented; her insight and judgment were intact. A.R. 169. Dr. Donaldson diagnosed a depressive disorder, nos, and a generalized anxiety disorder. He placed her Global Assessment of Functioning ["GAF"] at 50-60. According to Dr. Donaldson, plaintiff's ability understand, remember and carry out one or two step job instruction was not impaired; her ability to perform repetitive tasks was moderately limited by her neurological status, as was her ability to attend to relevant stimuli. Her ability to relate to supervisors and co-workers was moderately limited, as was her ability to withstand the stress and pressures associated with day to day work activity. Dr. Donaldson recommended psychotherapy, medication, a neuropsychological evaluation and vocational training. A.R. 170.

In February 2008, a state agency psychologist reviewed the record and opined that plaintiff's affective disorder and anxiety-related disorder did not satisfy Listings 12.04 and 12.06, respectively. A.R. 171. According to the psychologist, plaintiff

3

would be no more than moderately impaired in her ability to engage in work-related activities.  A.R. 181-86.  She would be able to understand, remember and carry out simple instructions and had sufficient concentration for routine, repetitive tasks.  She could engage in superficial and occasional interactions with others and could work in settings that do not require adherence to strict time and production standards.  A.R. 187.

That same month, a state agency physician reviewed the record and opined that plaintiff had no exertional limitations, A.R. 190, although plaintiff had certain postural and environmental limitations. A.R. 191, 193.

In April 2009, Robert M. Hess, M.D., performed a consultative neurological evaluation of the plaintiff.  On clinical examination, Dr. Hess noted a significant left antalgic gait and difficulty heel and toe walking on the left.  Deep reflexes were 2+ on the right and absent in the right knee.  Plaintiff had poor foot invertors, evertors and great toe extensors, which Dr. Hess attributed to the Lisfranc surgery. Grasp, manipulation, pinch and fine coordination were normal. There were no pathological reflexes nor was there muscle atrophy.  Range of motion of the cervical spine was normal.  Range of motion of the right shoulder was slightly reduced. Range of motion of the dorsal lumbar spine was limited at 20 degrees in flexion, 10 degrees in extension and 10 degrees in right and left lateral bending.  Dr. Hess diagnosed idiopathic paroxysmal cerebral dysrhythmia (seizures), of unknown etiology, bronchial asthma, status post operative fixation of the left metatarsal fracture, Lisfranc fracture and possible pre-diabetes.  A.R. 210.  He recommended another "neurological consultation evaluation" and testing.  A.R. 211. According to Dr. Hess, plaintiff could frequently lift up to 10 pounds

4

and occasionally lift up to 20 pounds.  A.R. 216.  She could sit for
45 minutes at a time, but for only 1 hour in an 8 hour work day, could
stand for 2 hours at a time, but for only 1 hour in an 8 hour work
day, and could walk for 30 minutes at a time, but for only 1 hour in
an 8 hour work day.  A.R. 217.  Although Dr. Hess stated that
plaintiff did not require a cane to walk, he also stated that a cane
is medically necessary.  A.R. 217.  Plaintiff could never reach with
her right hand or operate foot controls with either foot. A.R. 218.

John L. Tilley, Psy.D., performed a consultative
psychological evaluation of plaintiff in June 2009.  A.R. 243-48.  On
clinical examination, plaintiff's mood was depressed and her affect
was volatile and labile.  She acknowledged some suicidal ideation.
She was oriented, her insight was adequate and her judgment was not
markedly impaired.  A.R. 246.  On the Achenbach Adult Self-Report,
"the sum of her scores on the Critical Items was in the clinical
range."  A.R. 247.  Dr. Tilley diagnosed major depressive disorder,
recurrent and severe, without psychotic features, and post traumatic
stress disorder, chronic.  He placed her current GAF at 40.  A.R. 247.
From a "purely psychological perspective," Dr. Tilley opined, "the
patient is unemployable."  A.R. 248.  Her impairments were expected to
last "9 to 11 months."  *Id.*; A.R. 250. Dr. Tilley recommended further
treatment.  In an assessment of plaintiff's mental functional
capacity, Dr. Tilley indicated that plaintiff was markedly or
extremely limited in many work-related areas.  A.R. 249.

Plaintiff has been treated at the Lower Lights Christian
Health Center. A.R. 204-08, 224-241.  Medical center records reflect
complaints of left foot pain, numbness in the right arm, difficulty
breathing and a seizure disorder.  A.R. 206.  Medical center personnel
have also prescribed medication for plaintiff's depression. A.R. 205.

5

In June 2009, Lynne Toretto, M.D., completed a basic medical form in which she indicated that plaintiff's seizure disorder is controlled by medication and that her status post left foot fusion limits her ability to walk. Dr. Toretto also noted asthma and complaints of left arm and hand numbness. A.R. 251. An x-ray of the left foot showed no loosening of hardware or degenerative joint disease. *Id.* According to Dr. Toretto, plaintiff can stand/walk for a total of 2 hours, for 15 minutes at a time. A.R. 252. Her ability to sit is unimpaired. Although Dr. Toretto indicated that plaintiff's ability to lift and carry are affected, she indicated no weight limits in this regard. *Id.* Plaintiff would be moderately limited in her ability to reach with her left hand and would be extremely limited in her ability to use her left foot for repetitive foot movements. According to Dr. Toretto, plaintiff is "employable." *Id.*

**Testimony**

At the administrative hearing, plaintiff acknowledged that Tegretol controls her seizures, A.R. 375, and that she does not take the medication regularly. She explained that the medicine makes her sleepy or drowsy, A.R. 374, and she has financial problems. A.R. 375. Plaintiff also testified that she still suffers left foot pain as a result of her Lisfranc fracture. "I can't walk too far without feeling pain or stand too long, and sometimes when I sit then it's like a numbness in my legs where I have to – notice I've been moving around from discomfort from sitting around. Like it cuts the circulation off or something." A.R. 370. She uses pain cream for relief or elevates her foot, which sometimes helps. *Id.* She must walk on the heel of her left foot. A.R. 381. She can walk three or four blocks before having to sit. A.R. 372. She experiences numbness in her legs if she sits too long. *Id.* She testified that she can lift "a load of

6

laundry or a couple bags of groceries." A.R. 373.

Plaintiff also testified that she sleeps a lot during the day.  Her medication also makes her irritable.  A.R. 377. She has difficulty dealing with others and has lost work because of her poor ability to interact with others.  A.R. 377.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity found by the administrative law judge.  In response, the vocational expert testified that such a claimant could perform sedentary work that exists in significant numbers in the national economy, including such jobs as inspector, office machine operator and mail clerk.  A.R. 383-84.  Asked to assume Dr. Tilley's mental residual functional capacity assessment, the vocational expert testified that such a claimant could not work.  A.R. 384-85.

**Administrative Decision**

In his decision, the administrative law judge found that plaintiff's severe impairments consist of a seizure disorder, status post Lisfranc fracture of the left foot, an affective disorder and an anxiety disorder.  A.R. 16.  He relied on the opinion of the reviewing state agency psychologist to find that plaintiff's mental impairments neither meet nor equal a listed impairment.  A.R. 18-19.

The administrative law judge went on to find that plaintiff has the residual functional capacity to perform a reduced range of light work, with certain postural limitations.  She would also be precluded from using foot controls with her left leg and from working around hazardous machinery or unprotected heights.  She would be limited to simple, repetitive tasks that are not fast-paced or present strict time limitations or high production quotas.  She could interact with co-workers and supervisors for questions and instructions, but

7

should generally work alone.  She should be limited to working in a
static environment with minimal changes in routine.  She would have
difficulty interacting with members of the general public.  A.R. 19-
20.  In making these findings, the administrative law judge relied on
the reports and opinions of the state agency reviewing physician as
well as plaintiff's testimony and the medical evidence.  He considered
the consultative opinions of Dr. Hess but did not accept those
opinions "to the extent they are inconsistent with" the residual
functional capacity found by the administrative law judge.  A.R. 21.

> These extreme limitations are not supported by
> the findings on examination and are internally
> inconsistent. Notably if the claimant was capable
> of standing for two hours at a time, she would
> not be limited to just one hour of standing in a
> day.  There are additional inconsistencies in Dr.
> Hess' findings.  For instance, Dr. Hess also
> opined that the claimant could never reach
> overhead with the right arm, yet on examination
> he found that the claimant had normal muscle
> strength in the upper extremities.  His notes do
> show that the claimant had some slight
> limitations in range of motion of the right
> shoulder, yet Dr. Hess did not diagnose the
> claimant with any shoulder impairment and these
> findings do not justify a limitation to never
> reaching overhead.  Dr. Hess also limited the
> claimant to only occasional reaching, handling,
> fingering, feeling and pushing/pulling with both
> upper extremities yet, again, his findings on
> examination showed normal grasp, manipulation,
> pinch and fine coordination.  Moreover, despite
> Dr. Hess' assessed limitations, he found that the
> claimant was capable of most daily activities,
> including shopping, using public transportation,
> and preparing meals.  Further it is noted that
> Dr. Hess only evaluated the claimant on one
> occasion and did not have a longitudinal picture
> of the claimant's conditions.  Accordingly, Dr.
> Hess' opinions have been given only little weight
> and are accepted only to the extent that they are
> consistent with the residual functional capacity
> assessed above.

*Id.*(citations to record omitted).

The administrative law judge gave "great weight" to the mental assessment of the state agency reviewing psychologist.  A.R. 22.  He considered but declined to accord "any significant weight" to Dr. Tilley's consultative assessment:

> First, it is noted that Dr. Tilley opined that the limitations he assessed for the claimant would only last for eleven months.  Further, his opinions are inconsistent with the evidence from the claimant's treating sources which do not show significant mental impairments.  The findings of the consultative examiner also do not show that the claimant was as limited as found by Dr. Tilley.  Last, it is noted that Dr. Tilley relied in part on the claimant's subjective statements which . . . have not been found to be fully credible.

A.R. 22 (citations to record omitted).

Although the administrative law judge found that plaintiff's residual functional capacity precluded the performance of her past relevant work, he relied on the testimony of the vocational expert to find that plaintiff could nevertheless perform work that exists in significant numbers.  A.R. 25.  Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act.  A.R. 26.

**Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and  employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir.

9

1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In her *Statement of Specific Errors*, plaintiff contends that the administrative law judge erred in failing to give greater weight to the consultative opinions of Dr. Hess and Dr. Tilley. This Court disagrees.  An administrative law judge is required to consider all medical opinions and in particular to consider the length of the treatment relationship, the frequency of examination, the nature and extent of the relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole and the specialization of the medical source in determining the weight to be given an opinion.  20 C.F.R. § 416.927(d).  As noted *supra,* the administrative law judge explicitly and exhaustively considered the opinions of Drs. Hess and Tilley and gave good reasons for his failure to accord great weight to those opinions.  As the administrative law judge noted, Dr. Hess's assessment of plaintiff's ability to perform work-related functions was internally inconsistent and was not supported by even his own clinical findings.  Dr. Tilley's opinion did not, on its face, support a finding of disability likely to last at least twelve months and was inconsistent with the consultative

10

evaluation of Dr. Donaldson.  Moreover, the Commissioner is not bound by an opinion that a claimant is "unemployable."  20 C.F.R. § 416.927(e)(1).  The administrative law judge's evaluation of the opinions of Drs. Hess and Tilley applied appropriate standards and enjoys substantial support in the record.  The Court is without authority to disturb the findings of the administrative law judge in this regard.

Plaintiff also urges a remand of the case, pursuant to Sentence 6 of 42 U.S.C. § 405(g), for consideration of new and material evidence.  Plaintiff submitted to the Appeals Council a number of records not submitted to the administrative law judge.  A.R. 257-357.  Most, but not all, of those records were generated after the administrative hearing and relate to plaintiff's mental impairments and a right shoulder impairment.  Although evidence submitted to the Appeals Council may not be considered by this Court for purposes of substantial evidence review of the administrative law judge's decision, *see Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *see also Cline v. Comm'r of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993), the Court may order the Commissioner to consider additional evidence

> but only upon a showing that there is new
> evidence which is material and that there is good
> cause for the failure to incorporate such
> evidence into the record in a prior proceeding; .
> . .

42 U.S.C. §405(g). Evidence is "new," for purposes of this provision, only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Sullivan v. Finkelstein,* 496

U.S. 617, 626 (1990). Evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). Moreover, the plaintiff must establish that good cause exists for the failure to incorporate the new and material evidence into the prior proceeding. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (6th Cir. 1984).  A plaintiff may establish good cause by demonstrating a reasonable justification for the failure to acquire and present the evidence at the administrative hearing. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001).  This standard applies even to evidence submitted for the first time to the Appeals Council. *Id.; Cline v. Comm'r of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996).

     This Court concludes that most of the evidence submitted by plaintiff to the Appeals Council qualifies as the new and material evidence that warrants a Sentence 6 remand.  With the exception of the June 2009 records from Netcare, A.R. 258-63, all the other records were generated after the administrative hearing in this case.  The evidence reflected in those records is therefore new and plaintiff has good cause for her failure to acquire and present that evidence at the administrative hearing.  Moreover, many of the records relate to plaintiff's affective disorder and anxiety disorder which the administrative law judge included among plaintiff's severe impairments.  Furthermore, the February 2010 MRI of plaintiff's right

shoulder, A.R. 348-57, may provide some documentation of plaintiff's complaints of right shoulder pain, which the administrative law judge acknowledged but did not include among plaintiff's severe impairments. *See* A.R. 16. Thus, the new evidence is material because there is a reasonable probability that the Commissioner would have reached a different result had the records been before the administrative law judge.

It is therefore **RECOMMENDED** that the action be remanded to the Commissioner, pursuant to Sentence 6 of 42 U.S.C. § 405(g), for review of new and material evidence.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

<i>s/Norah McCann King</i><br>Norah M<sup>c</sup>Cann King

13

August 1, 2012                    United States Magistrate Judge